# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Gary L. L.,                                    Case No. 23-cv-17 (KMM/ECW)

      Plaintiff,

v.                                             **REPORT AND RECOMMENDATION**

Kilolo Kijakazi,
*Acting Commissioner of Social Security*,

      Defendant.

This matter is before the Court on Plaintiff Gary L. L.'s Motion for Summary Judgment (Dkt. 10) and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 12). Plaintiff filed this case seeking judicial review of a final decision by the Commissioner denying his application for supplemental security income. (*See generally* Dkt. 1.) This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, Plaintiff's Motion should be granted in part and Defendant's Motion be denied.

## I.    BACKGROUND

On April 12, 2021, Plaintiff filed an application for Title XVI Supplemental Security Income, alleging disability as of July 1, 1997. (R. 211.)[1] His application was denied initially and on reconsideration. (R. 119, 133.) Plaintiff requested a hearing, and

---

[1]    The Social Security Administrative Record ("R.") is available at Docket No. 8.

on January 13, 2022, Plaintiff appeared for a hearing before Administrative Law Judge Mikel Lupisella ("the ALJ").  (R. 29.)  The ALJ issued an unfavorable decision on February 10, 2022, finding Plaintiff was not disabled.  (R. 16-24.)

Following the five-step sequential evaluation process under 20 C.F.R. § 416.920(a), the ALJ first determined at step one that Plaintiff had not engaged in substantial gainful activity since April 12, 2021, the application date.  (R. 18.)

At step two, the ALJ determined that Plaintiff had the following severe impairments: bipolar disorder, personality disorder, post-traumatic stress disorder ("PTSD"), substance use disorder, and generalized anxiety disorder.  (R. 18.)

At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. part 404, subpart P, appendix 1.  (R. 18.)

At step four, after reviewing the entire record, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: he is limited to performing simple and routine tasks in a work environment free of fast-paced production requirements (i.e. no work on an assembly line); is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes; is limited to occasional interaction with co-workers and supervisors; is limited to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required.

(R. 20.)  The ALJ found that Plaintiff was unable to perform any past relevant work. (R. 23.)

At the fifth step of the sequential analysis, and based on the testimony of the vocational expert ("VE"), the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: as a janitor (Dictionary of Occupational Titles ("DOT") 381.687-014), a heavy exertion level unskilled job with an SVP-2 with approximately 300,000 jobs available in the national economy; as a hospital cleaner (DOT 323.687-010), a medium exertion level unskilled job with an SVP-2 with approximately 220,000 jobs available in the national economy; and as a warehouse worker (DOT 922.687-058), a medium exertion level unskilled job with an SVP-2 with approximately 130,000 jobs available in the national economy.  (R. 24.)

Accordingly, the ALJ deemed Plaintiff not disabled from the date his application was filed on April 12, 2021, through the date of the ALJ's decision on February 10, 2022. (R. 41.)

Plaintiff requested review of the decision, and the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner.  (R. 1-6.)  Plaintiff then commenced this action for judicial review.  (Dkt. 1.)

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties.  The Court will recount the facts of record to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.  In this case, because Plaintiff's challenge is

limited to an issue relating to his mental health, the Court recounts only the record and testimony relevant to that impairment.

## II.    RELEVANT RECORD

### A.    Medical Record

On April 14, 2021, Plaintiff was seen by psychiatric nurse practitioner Jenny Bliss ("Bliss"). (R. 366, 439.) Plaintiff had a history of PTSD, bipolar disorder, depression, anxiety, sleep difficulties, and panic episodes. (R. 366.) Plaintiff was experiencing increased symptoms due to his pending divorce, increased alcohol use, losing his license, being fired from his job, and financial difficulties. (R. 366.) He was residing at a sober living house, was attending Alcoholics Anonymous meetings, and had not been using alcohol for two weeks. (R. 366.) Plaintiff had not taken medications for the previous three years. (R. 366.) Plaintiff's symptoms had improved, and his main concern was depression. (R. 366.) He denied an option for mood stabilizing medications and was not in any therapy. (R. 366.) Plaintiff reported feeling irritable most of the time and was often isolating in his room, but asserted that he got along with his roommate. (R. 366.) It was also noted that Plaintiff had started the application process for Social Security benefits. (R. 366.) Based on Plaintiff's reports, he had moderate anxiety under the GAD-7 and moderate depression under the PHQ-9.[2] (R. 368-69.) Plaintiff's mental

---

[2]    The Generalized Anxiety Disorder 7-item (GAD-7) is an anxiety screening tool. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7306644/ (last visited October 10, 2023). A score of 5-9 indicates mild anxiety; 10-14 indicates moderate anxiety; and greater than 15 indicates severe anxiety. *Id.* The PHQ-9 score is a depression screening tool. *See* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1495268/ (last visited October

status examination was normal, and it was noted that he was not a danger to others. (R. 367.) Plaintiff was on hydroxyzine for his anxiety, gabapentin for his anxiety and mood, and Cymbalta for his depression and anxiety. (R. 366-67, 371.)

On April 26, 2021, Bliss filled out a Medical Source Statement ("MSS") of Plaintiff's ability to do work-related activities (mental). (R. 373.) Bliss found that Plaintiff had moderate limitations with respect to: understanding and remembering short and simple instructions; and carrying out short and simple instructions. (R. 373.) Bliss also found marked limitations as to Plaintiff's ability to: understand and remember detailed instructions; carry out detailed instructions; and make judgments on simple work-related decisions. (R. 373.) Bliss' support for these opinions was Plaintiff's history of failed attempts to maintain employment, being fired from his last job due to difficulties with completing tasks, and his severe anxiety along with symptoms of PTSD, which limited his ability to perform work related activities. (R. 373.)

In addition, Bliss found that Plaintiff had a moderate limitation to his ability to interact appropriately with the public; and a marked limitation as to his ability to interact with supervisors and co-workers, respond appropriately to work pressures in a usual work setting, and respond appropriately to changes in a routine work setting. (R. 374.) The medical findings in support of this assessment included Plaintiff's serious and persistent symptoms of PTSD, anxiety, and mood disorder for over ten years; difficulties with adapting to the workplace; a history of receiving Social Security benefits in the past; and

---

10, 2023). A score of 10-14 indicates moderate depression, 15-19 indicates moderately severe, and 20-27 indicates severe. *Id.*

a significant sleep disturbance causing irritability, restlessness, and difficulty coping with stressful situations. (R. 374.) Bliss noted that Plaintiff's bipolar and depression caused fluctuations in his mood and irritability; and that his primary insomnia caused fatigue, poor memory, and difficulties with his emotions. (R. 374.)

On June 23, 2021, Plaintiff was again seen by Bliss. (R. 451.) He was switched to Clonazepam because Trazodone was ineffective and causing him nightmares. (R. 451.) Bliss' mental status observations for Plaintiff were normal and he did not pose a threat to others. (R. 451-52.) Based on Plaintiff's reports, he had severe anxiety under the GAD-7 and moderately severe depression under the PHQ-9. (R. 453-54.)

On July 23, 2021, state agency psychologist Dr. Mary Sullivan opined that Plaintiff had medically determined mental impairments of a depressive, bipolar and related disorder; an anxiety related disorder; and a trauma-stressor related disorder. (R. 96.) As part of the social interaction portion of the mental RFC, Dr. Sullivan opined that Plaintiff was not significantly limited as to his ability to ask simple questions or request assistance or his ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (R. 99.) Dr. Sullivan also found that Plaintiff was moderately limited as to his ability to: interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (R. 99.) Dr. Sullivan went on to find that Plaintiff:

> [R]etains the capacity to handle brief, infrequent and superficial contact with the general public, co-workers and supervisors. SAPC: Ability to handle supervision would be reduced secondary to some conflicted reactions to

6

authority, but in the context of reasonably supportive, non-over-the-shoulder supervision, would be adequate to handle ordinary levels of supervision found in most customary work settings.

(R. 99.)  On August 30, 2021, on reconsideration, state agency psychologist Dr. Jeffery Boyd found the same limitations with respect to social functioning.  (R. 108-09.)

On October 11, 2021, Plaintiff was seen by Bliss for a follow-up psychiatric appointment.  (R. 496.)  Sleep continued to be problematic.  (R. 496.)  He was able to fall asleep using Klonopin, but did not stay asleep.  (R. 496.)  He was allowed to use Trazodone and his dosage of Cymbalta was increased.  (R. 496.)  Plaintiff was not attending therapy.  (R. 496.)  He attended Alcoholic Anonymous meetings, but they caused him anxiety due to the crowds.  (R. 496.)  Based on Plaintiff's reports, he had moderate anxiety under the GAD-7 and moderate depression under the PHQ-9.  (R. 498-99.)  Bliss' mental status observations for Plaintiff were normal and he did not pose a threat to others.  (R. 497.)

During his November 8, 2021 psychiatric appointment, it was noted that Plaintiff had increased his dosage of risperidone for his irritability and reported "noticing improvements in irritability and mood with this adjustment" and that he was "able to manage his anger better."  (R. 502.)  He reported that he recently had one episode when another resident threatened him, and Plaintiff started yelling at the person and had difficulty calming down for the rest of the day.  (R. 502-03.)  Anxiety continued to be elevated with living at the sober house with other residents.  (R. 503.)  Based on Plaintiff's reports, he had severe anxiety under the GAD-7 and moderate depression under the PHQ-9.  (R. 505-06.)  The mental status observations for Plaintiff were normal,

except for an anxious mood and worrisome affect. (R. 503.) Plaintiff did not pose a threat to others. (R. 504.)

On November 24, 2021, Bliss filled out a mental MSS for Plaintiff. (R. 509-11.) Bliss found that Plaintiff had marked limitations with respect to understanding and remembering short and simple instructions; carrying out short and simple instructions; understanding and remembering detailed instructions; carrying out detailed instructions; and making judgments on simple work-related decisions. (R. 509.) Bliss' support for these opinions was Plaintiff's history of failed attempts to maintain employment, being discharged from the Army, being in prison, prior approval of Social Security benefits, and symptoms of mood disorder, PTSD, sleep disturbances, and irritability. (R. 509.)

In addition, Bliss found that Plaintiff had marked limitations in his ability to interact appropriately with the public, supervisors, and co-workers; and extreme limitations as to his ability to respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting. (R. 510.) The medical findings in support of this assessment included a history of difficulties maintaining personal and social relationships, quitting and being forced from employment, having minimal contacts with family, difficulties with others at his sober living house, and limiting himself from social interactions. (R. 510.)

### III.   LEGAL STANDARD

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or if the ALJ's decision resulted from an error of law. *Nash v. Comm'r, Soc.*

*Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018) (citing 42 U.S.C. § 405(g) and *Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018)). "'Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions.'" *Id.* (quoting *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)). The Court "considers evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* "If substantial evidence supports the Commissioner's conclusions, this court does not reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Id.* (citation omitted). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004). "Assessing and resolving credibility is a matter properly within the purview of the ALJ." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citing *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003) ("Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide.").

## IV. DISCUSSION

Plaintiff's challenge to the ALJ's determination is that the ALJ failed to properly incorporate the opinions provided by the state agency psychologists[3] in assessing a mental RFC to him, and that the ALJ failed to properly analyze Bliss' opinions regarding

---

[3] The SSA refers to a reviewing psychologist as a "Psychological Consultant." SSR 17-2p, 2017 WL 3928306, at *3.

his mental functioning.  (Dkt. 10; *see also* Dkt. 14.)  The Court discusses these issues below.

**A.**     **Whether the ALJ Failed to Adequately Incorporate into the RFC Social Interaction Limitations Contained in Dr. Sullivan's and Dr. Boyd's Opinions**

Plaintiff argues that despite assessing moderate limitations in the domain of interacting with others as part of the Paragraph B Criteria at step 3, and despite finding the opinions of agency psychologists Dr. Sullivan and Dr. Boyd partly persuasive, the RFC formulated by the ALJ was less restrictive than the opinions of Dr. Sullivan and Dr. Boyd.  (Dkt. 10 at 11; Dkt. 14 at 3.)  Plaintiff complains that the state agency consulting psychologists separately evaluated Plaintiff's limitations with regard to the public, co-workers, and supervisors and found that Plaintiff would have moderate limitations in interaction as to all three (public, co-workers, and supervisors), and while the ALJ found these opinions persuasive, the ALJ did not limit Plaintiff's interactions with the public to brief, infrequent, or superficial.  (Dkt. 10 at 12.)  Instead, the ALJ limited Plaintiff "to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes," which Plaintiff asserts is less restrictive than the medical opinions which required contact to be brief, infrequent and superficial.  (*Id.*)  As such, Plaintiff claims that the RFC does not eliminate contact with the public which can occur in a place of employment outside of "transactional work," such as in the context of the hospital worker (DOT 323.687-014) position identified by the VE in response to the ALJ's hypothetical, which Plaintiff claims would inherently require contact with patients, staff and visitors.  (*Id.* at 12-13.)

In addition, Plaintiff argues that the ALJ committed a reversible error by not including a limitation to "superficial" interactions with others in the RFC, as Dr. Sullivan and Dr. Boyd both opined that interactions must be superficial. According to Plaintiff, the limitation to occasional interactions contained in the RFC does not adequately account for the need to have superficial interactions. (*Id.* at 14-15.)

The Commissioner counters that the ALJ determined the psychological consultants' findings were only partially persuasive and the record warranted greater limitations, and therefore Plaintiff cannot show any harm. (Dkt. 13 at 8.)

A claimant's RFC is the "most [he] can do despite his limitations, including both physical and mental limitations." *LeeAnthony C. v. Berryhill*, Case No. 18-cv-77 (NEB/TNL), 2019 WL 2343732, at *3 (D. Minn. May 13, 2019) (citing 20 C.F.R. § 416.945). An ALJ's determination of "a claimant's RFC must be 'based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his] limitations." *Id.* (quoting *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013)). "The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Ackerman v. Kijakazi*, Case No. 4:21-CV-814 PLC, 2023 WL 2496839, at *4 (E.D. Mo. March 14, 2023) (quoting *Roberson v. Astrue*, 481 F.3d 1020, 1023 (8th Cir. 2007)) (cleaned up). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Combs v. Berryhill*, 878 F.3d 642, 646)

(8th Cir. 2017)). "An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand." *Id.* (citations omitted).

As stated previously, the ALJ imposed the following mental RFC, finding that Plaintiff:

> [I]s limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes; is limited to **occasional interaction with co-workers and supervisors; is limited to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes; the work itself should deal with things rather than people throughout a typical workday; and there should be no tandem tasks or teamwork required**.

(R. 20 (emphasis added).) State agency psychologists Dr. Sullivan and Dr. Boyd opined that Plaintiff: "Retains the capacity to **handle brief, infrequent and superficial contact with the general public, co-workers and supervisors.**" (R. 99, 108-09 (emphasis added).) In analyzing their opinions, the ALJ found as follows:

> The undersigned has fully considered the medical opinions and prior administrative medical findings as follows: Dr. Sullivan and Dr. Boyd, the state agency consulting physicians who reviewed the medical records available on July 23, 2021, and August 30, 2021, respectively, found that the claimant could carry out routine, repetitive, and 3-4 step tasks, with adequate persistence and pace; retained the capacity to handle **brief, infrequent, and superficial contact with the public, coworkers, and supervisors (being able to handle ordinary levels of supervision found in most customary work settings**) (C5A/6-7; C7A/6-7). **These opinions are partially persuasive**, as the medical evidence available at the time they were given does support at least these levels of limitations, as discussed in the opinions themselves. The claimant's subjective reports on depression and anxiety screening generally suggest only moderate symptoms, and the claimant has reported that his medication typically helps, although he continues to report symptoms. **The claimant's longitudinal treatment record warrants slightly greater limitations** (Exhibits C1F, C3F, and C6F).

(R. 22 (emphasis added).)

It is true that the ALJ only limited Plaintiff to occasional contact with supervisors and coworkers whereas the agency psychologists limited Plaintiff to occasional and superficial contact.  "Courts have recognized that the terms 'occasional' and 'superficial' are not coterminous."  *Sara R. v. Kijakazi*, No. 22-CV-1271 (KMM/TNL), 2023 WL 4564421, at *6 (D. Minn. June 28, 2023) (collecting cases), *R. & R. adopted*, 2023 WL 4561312 (D. Minn. July 17, 2023).  "Occasional contact" goes to the quantity of time spent with the individuals, while "superficial contact" goes to the quality of the interaction.  *Id.* (marks and citations omitted).  As such, "'courts routinely find that limiting the *quantity* of time spent with an individual does not accommodate a limitation relating to the *quality* of the interactions—including a limitation to 'superficial' interaction.'"  *Id.* (quoting *Sue A. M. v. Comm'r of Soc. Sec.*, No. 3:22-cv-171, 2022 WL 14346260, at *4 (S.D. Ohio Oct. 25, 2022)) (citations omitted).  As argued by the Commissioner, the Court acknowledges that the ALJ "is not required to adopt all limitations proposed by [expert reviewers]—even if the ALJ has accorded that [expert's] opinion substantial weight."  *Mark S. v. Saul*, No. 18-cv-02936 (HB), 2020 WL 1043795, at *6 (D. Minn. Mar. 4, 2020).  Rather, the RFC must be "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations."  *Myers*, 721 F.3d at 527 (citations omitted).  Indeed, as one court has explained:

> "Superficial" social interaction has no regulatory definition. And while the state agency psychologists opined Plaintiff should be limited to superficial interactions, neither defined what "superficial" meant. Accordingly, precisely how the RFC's limitations differ from superficial interaction limitations—if they do at all—is unclear. Still, even if the depth of interaction

described in the RFC exceeds "superficial" interaction, the ALJ was not required to adopt the state agency psychologists' opinions in their entirety.

*Sasha M. v. Comm'r of Soc. Sec.*, No. 2:22-CV-2101, 2023 WL 1793536, at *9 (S.D.

Ohio Feb. 7, 2023) (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 276 (6th

Cir. 2015)) (citations omitted).  However, given that the ALJ claimed in his decision that

the limitations imposed by the state agency psychologists did not go far enough, the fact

that the ALJ did not include any restriction as to the quality of contact (superficial or

some greater restriction) with Plaintiff's supervisors or co-workers, not just the duration

of those contacts, remand is warranted to further address the evidence in the record as to

this issue and clarify the RFC in this regard.[4]  *See Paris F. F. v. Kijakazi*, No. 22-CV-282

(TNL), 2023 WL 5403909, at *11 (D. Minn. Aug. 22, 2023) (citations omitted) ("In sum,

remand is required to allow the ALJ to explain why he found the prior administrative

medical findings of the state agency psychological consultants to be generally persuasive

except as to Plaintiff's ability to sustain concentration and persistence but declined to

---

[4]     The Court notes that the ALJ included in the RFC that there should be "no tandem tasks or teamwork required."  (R. 20.)  As stated previously, superficial contact goes to the quality of contact.  Courts have found that the "quality of contact may include considerations of 'handling instruction and criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintaining socially appropriate behavior, and adhering to basic standards of neatness and cleanliness.'"  *Brenton S. v. Kijakazi*, No. 421CV00097JMSDML, 2022 WL 620604, at *4 (S.D. Ind. Mar. 3, 2022) (quoting *Wartak v. Colvin*, 2016 WL 880945, at *7 (N.D. Ind. Mar. 8, 2016)).  The fact that they are not performing tasks together does not address the reasonable scope of workplace interactions that may be expected between co-workers and with supervisors.  *See id.* at *5 ("Even if the Court were to accept the Commissioner's explanation of 'no tandem work' as a limitation on performing work as 'part of a team,' the ALJ's definition still does not speak to whether [claimant] would be capable of responding to his supervisor or to requests from coworkers.").

include a limitation to superficial interactions with others or explain how the residual

functional capacity accommodated this limitation.").

   In contrast, the ALJ set forth the **quality** and **quantity** of contacts with the public,

by limiting Plaintiff to "no transactional interaction with the public" (with examples) and

that "the work itself should deal with things rather than people throughout a typical

workday."  (R. 20.)  "The Court notes that the term 'superficial' is defined by neither the

DOT nor in Social Security regulations, SSRs, or HALLEX."  *Amber L. v. Comm'r of*

*Soc. Sec. Admin.*, No. 3:21-CV-00202, 2022 WL 2948952, at *6 (S.D. Ohio July 26,

2022), *R. & R. adopted*, 2022 WL 3226351 (S.D. Ohio Aug. 10, 2022).  Although the

SSA has not defined "infrequent" contact, it defines "frequent" as "occurring from one-

third to two-thirds of the time." SSR Social Security Ruling 83–10, 1983 WL 31251 at

*6; *see also Maryan H. S. v. Saul*, No. CV 19-23 (BRT), 2020 WL 1470970, at *3 (D.

Minn. Mar. 26, 2020) ("Occasionally' means 'occurring from very little up to one-third

of the time' (up to 2.67 hours out of an 8-hour work day).  'Frequently' means 'occurring

from one-third to two-thirds of the time' (2.67 to 5.33 hours out of an 8-hour work

day).") (citing SSR 83-10)).  Since "infrequent" is less than "frequent," logic infers that

"infrequent" would be less than one-third of the time.  Indeed, courts have rejected a

finding that infrequent is less than occasional or that it can only mean rare.  *See, e.g.*,

*Locatelli v. Soc. Sec. Admin.*, No. 2:22-CV-00014, 2023 WL 4921505, at *6 (M.D. Tenn.

Aug. 1, 2023), *R. & R. adopted sub nom*., 2023 WL 5538974 (M.D. Tenn. Aug. 28, 2023)

(collecting cases) ("Courts in this circuit have rejected Locatelli's argument that

'infrequent' can only mean 'rare' or 'less than occasional' in the social security

context.").  Here, the RFC precludes Plaintiff from interacting with the public in terms of the type of work that he does and states that the work he could perform should not involve people.  Contrary to Plaintiff's assertions (Dkt. 14 at 3-4), it is hard for the Court to comprehend how these limitations are less onerous than brief, infrequent, and superficial contact with the general public.  "The ALJ is not required to use magic words in the RFC and there is no requirement that the ALJ include every limitation verbatim into her RFC determination." *Philpot v. Comm'r of Soc. Sec.*, No. 6:16-CV-417-ORL-40TBS, 2017 WL 912122, at *3 (M.D. Fla. Feb. 14, 2017), *R. & R. adopted*, 2017 WL 897342 (M.D. Fla. Mar. 7, 2017) (marks and citations omitted); *see also Kasey K., v. Kijakazi*, No. 22-CV-2029 (WMW/DLM), 2023 WL 5754115, at *4 (D. Minn. July 13, 2023) (citation omitted), *R. & R. adopted sub nom.*, 2023 WL 5624007 (D. Minn. Aug. 31, 2023) ("It is not necessary for an ALJ to use magic words where, as here, the record as a whole demonstrates the ALJ understood a claimant's mental impairments and imposed RFC limitations (or as the case may be, declined to impose limitations) related to those impairments.").  Plaintiff fails to demonstrate how the ALJ improperly expanded the limitations set forth by Drs. Sullivan and Boyd.  Plaintiff points to the fact that at step 5, the VE responded to a hypothetical incorporating the RFC by identifying the job of hospital cleaner as one a person with those limitations could perform:

> For example, one of the jobs provided by the vocational expert in response to the ALJ's hypothetical question was the job of a "hospital cleaner". DOT defines the job of a hospital cleaner as "cleans hospital patient rooms, baths, laboratories, offices, halls, and other areas" See DOT 323.687-014 [sic]. Hospitals are open 24 hours per day and are often highly crowded with patients, staff and visitors. In a high traffic job site such as a hospital, Plaintiff would be required to clean patient's rooms, hallways and offices where he

would constantly come in contact with the general public. This clearly surpasses the social interaction parameters set by Dr. Sullivan and Dr. Boyd in their medical opinions. In a highly populated location such as a hospital, even in the absence of transactional work, Plaintiff would be in constant contact with patients, visitors and medical staff. This is why the ALJ's failure to limit plaintiff's interactions with the public to brief, infrequent and superficial in accordance with the opinions of Dr. Sullivan and Dr. Boyd, created an RFC which is inconsistent with any medical opinion or evidence in the record.

(Dkt. 10 at 13.)

Here, the ALJ limited Plaintiff to unskilled work.  (R. 20.)  "The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."  Social Security Ruling 83-15, Titles II & XVI: Capability to Do Other Work—The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857, at *4 (Social Sec. Admin. Jan. 1, 1985).  "A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base."  *Id.*  "These jobs ordinarily involve dealing primarily with objects, rather than with data or people. . . ."  *Id.* This resembles the limitation in the RFC that Plaintiff's work should involve things and not people.[5]  Further, the DOT rates the degree to which these jobs require a person to

---

[5]    Plaintiff also relies on the Program Operations Manual System ("POMS") (DI 25020.010) to demonstrate how critical being able to accept criticism from supervisors is for unskilled positions.  (Dkt. 10 at 16.)  Even assuming that this is the case, the "POMS guidelines, which help Administration employees apply program regulations, do not have legal force, and do not bind the Commissioner."  *N. v. Kijakazi,* No. 21-CV-2222

function in relation to other people.  *See generally*, DOT app. B (explanation of data, people, and things), *available at* https://occupationalinfo.org/appendxb_1.html (last visited October 10, 2023).  The rating scale ranges from 0 to 8, with 8 being the lowest level of functioning required.  *Id.*  A hospital cleaner:

> Cleans hospital patient rooms, baths, laboratories, offices, halls, and other areas: Washes beds and mattresses, and remakes beds after dismissal of patients. Keeps utility and storage rooms in clean and orderly condition. Distributes laundered articles and linens. Replaces soiled drapes and cubicle curtains. Performs other duties as described under CLEANER (any industry) I Master Title. May disinfect and sterilize equipment and supplies, using germicides and sterilizing equipment.

323.687-010 Cleaner, Hospital, DICOT 323.687-010, 1991 WL 672782.  This DOT definition provides that a hospital cleaner's interaction with others is not significant and is rated at an 8.  In other words, the DOT for a hospital cleaner is consistent with the RFC.  Regardless, Plaintiff's challenge does not amount to a challenge of the RFC or its consistency with the DOT for the hospital cleaner job, but rather is more akin to attacking the Commissioner's reliance on the DOT as not encompassing the actual contact with others in the hospital setting necessary to perform the duties for that position.  However, the "Eighth Circuit has recently reaffirmed that even though the DOT has not been updated since 1991, an ALJ does not err in considering the VE's testimony, which relies in part on the DOT."[6]  *Nicolas J. v. Kijakazi*, No. 20-CV-1340 (WMW/ECW), 2022 WL

---

(KMM/LIB), 2023 WL 2249284, at *10 n. 4 (D. Minn. Jan. 4, 2023), *R. & R. adopted sub nom.*, 2023 WL 2246756 (D. Minn. Feb. 27, 2023) (citation omitted).

[6]    Plaintiff also relies on the hypotheticals posed to the VE at the hearing, asserting that "[t]he vocational expert testified that if an individual was unable to interact with supervisors, coworkers and the public or if an induvial [sic] was unable to get along with a

1109810, at *26 (D. Minn. Jan. 20, 2022), *R. & R. adopted sub nom.*, 2022 WL 807605

(D. Minn. Mar. 17, 2022).

In sum, the Court finds no error in the ALJ's formulation of the RFC with respect

to Plaintiff's ability to have contact with the public.

**B.    The ALJ's Consideration of Bliss' Mental Limitation Opinions**

Because Plaintiff's claim was filed after March 27, 2017, the applicable regulation

is 20 C.F.R. § 416.920c.  *See David A. P. v. Kijakazi*, No. 20-CV-1586 (TNL), 2022 WL

980302, at *14 (D. Minn. Mar. 31, 2022).  Pursuant to § 416.920c:

> [An ALJ] will not defer or give any specific evidentiary weight, including
> controlling weight, to any medical opinion(s) or prior administrative medical
> finding(s), including those from your medical sources. When a medical
> source provides one or more medical opinions or prior administrative
> medical findings, [an ALJ] will consider those medical opinions or prior
> administrative medical findings from that medical source together using the
> factors listed in paragraphs (c)(1) through (c)(5) of this section, as
> appropriate. The most important factors we consider when we evaluate the
> persuasiveness of medical opinions and prior administrative medical findings
> are supportability (paragraph (c)(1) of this section) and consistency
> (paragraph (c)(2) of this section).

20 C.F.R. § 416.920c(a).  Those factors include the supportability and consistency of

medical opinions and may include the relationship with the claimant, specialization, and

other factors.  20 C.F.R. § 416.920c(c).  According to the SSA's regulations:

> The factors of supportability (paragraph (c)(1) of this section) and
> consistency (paragraph (c)(2) of this section) are the most important factors
> we consider when we determine how persuasive we find a medical source's

---

supervisor 20 percent of the time, there would be no available jobs." (Dkt. 10 at 16-17.)
Even assuming that these hypotheticals, are vocationally relevant (R. 56-59), as stated
previously, the contact permitted by the RFC would not amount to significant contact
with the public and substantial evidence in the record supports the portion of RFC
allowing for restricted and limited contact with the public.

> medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 416.920c(b)(2); *see also Andrew H. S. v. Kijakazi*, No. 20-CV-1553

(SRN/HB), 2022 WL 409954, at *9 (D. Minn. Jan. 24, 2022) ("The two most important

factors are supportability and consistency, which the ALJ must address explicitly."), *R. &*

*R. adopted*, 2022 WL 409951 (D. Minn. Feb. 10, 2022) (citing 20 C.F.R. §

416.920c(b)(2) (2017)).

> The SSA has described supportability and consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

> An ALJ is not required to explain the remaining factors unless the ALJ "find[s]

that two or more medical opinions . . . about the same issue are both equally well

supported . . . and consistent with the record . . . but are not exactly the same."  20 C.F.R.

§ 416.920c(b)(2)-(3)).  The new articulation requirements are meant to "provide

individuals with a better understanding of [the Commissioner's] determinations and

decisions" and "provide sufficient rationale for a reviewing adjudicator or court."
Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at
5854, 5858 (Jan. 18, 2017).

Plaintiff argues that the ALJ failed to adequately evaluate and discuss the
"supportability" and "consistency" of Bliss' medical opinions and erred by failing to
provide a legally valid reason for rejecting these opinions. (Dkt. 10 at 18-19.) In this
regard, the ALJ found as follows:

> Jenny Bliss, a psychiatric mental health nurse practitioner, filled out a check
> box form medical source statement on April 26, 2021, checking the boxes
> that the claimant had moderate limitations in understanding, remembering,
> and carrying out short, simple instructions, with marked difficulty in detailed
> instructions. The claimant had a moderate limitation in interacting
> appropriately with the public but marked limitations in interacting
> appropriately with supervisors and coworkers, as well as responding
> appropriately to changes in the work setting and dealing with work pressures
> (Exhibit C2F). Ms. Bliss filled out another check box form medical source
> statement on November 24, 2021, reporting marked or extreme limitations in
> all areas, including the areas she previously checked as moderately limited
> (Exhibit C7F). These opinions are not persuasive, as they are far more
> restrictive than Ms. Bliss['] treatment notes at Kanabec support, with the
> claimant often having normal mental status exam except for occasionally
> having anxious mood or worrisome effect. Additionally, the claimant's own
> self-reporting on depression and anxiety screenings typically only indicates
> moderate depression and anxiety (Exhibits C1F, C3F, and C6F). Therefore,
> these opinions are inconsistent with, and unsupported by, the author's own
> treatment records.

(R. 22.)

Plaintiff asserts that the ALJ did not properly consider the "supportability" factor
with respect to Bliss' April 26, 2021 and November 24, 2021 medical opinions as to his
mental functioning. (Dkt. 10 at 20-23.) Plaintiff bases this assertion in part on the
argument that the ALJ incorrectly relied on documentation from the treatment records for

the proposition that that "the claimant's own self-reporting on depression and anxiety screenings typically only indicates moderate depression and anxiety." (*Id.* at 22-23.) The ALJ relied on Exhibits C1F, C3F, and C6F for this proposition. (R. 22.) While not entirely clear, it appears that the ALJ's vague characterization of the record is inconsistent with his supportability finding. Exhibit C6F is a November 8, 2021 psychiatric progress note[7] stating that Plaintiff scored as having severe anxiety under the GAD-7[8] and moderate depression under the PHQ-9, which was validated by Plaintiff's mental status exam showing he had an anxious mood and worrisome affect. (R. 502-06.) This is especially important considering the temporal proximity this November 8, 2021 progress note had to Bliss' November 24, 2021 mental MSS. Given the difference between the progress note and the ALJ's description of it, the Court finds the ALJ's supportability determination is not supported by substantial evidence.

The Commissioner points to evidence throughout the record and the ALJ's decision that it claims shows that the consistency and supportability finding by the ALJ is supported by substantial evidence. (Dkt. 13 at 12-14.) The Court rejects the Commissioner's post-hoc argument. Several courts have concluded that the regulation cannot be satisfied simply because a court can review the entirety of an ALJ's decision and recitation of the facts and craft a post-hoc rationale for the ALJ. *See*, *e.g.*, *Bonnett v.*

---

[7]    It is also the last progress note in the record.

[8]    While not directly referenced by the ALJ in his supportability finding, the June 23, 2021 psychiatric note (Exhibit C4F), also included a GAD-7 score indicative of severe anxiety. (R. 454.)

*Kijakazi*, 859 F. App'x 19, 20 (8th Cir. 2021) ("While the Commissioner argues that [the doctor's] opinion was not consistent with specific other evidence in the record, we will not affirm on this basis, as the ALJ made no such findings."); *Susan H. v. Kijakazi*, No. 21-cv-2688 (ECT/ECW), 2023 WL 2142786, at *3 (D. Minn. Feb. 21, 2023) (sustaining plaintiff's objection that magistrate judge made post hoc rationalizations to explain the ALJ's decision and remanding because the "ALJ's failure to explain how she considered the supportability and consistency factors for a medical source's medical opinions is legal error") (cleaned up); *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 908 (E.D. Mich. 2021) (sustaining plaintiff's objection to report and recommendation where "[b]oth the Commissioner [in the summary judgment brief] and the magistrate judge described other evidence in the administrative record that could furnish substantial evidence for a nondisability finding and support for rejecting the physicians' opinions" because this approach "ignores the mandate of the regulations that guarantees claimants a certain level of process that cannot be discounted by the substantial evidence test alone").

On remand, the ALJ shall reconsider Bliss' opinions in her April 26, 2021 and November 24, 2021 mental MSSs. (R. 373-375; 509-11.) This reconsideration must include, but need not be limited to, how Exhibit C4F factors into the supportability of Bliss' opinions. Moreover, if the ALJ finds that Bliss' opinions are unpersuasive, the ALJ shall articulate the reasons why, fully addressing the supportability and consistency factors as well as any other relevant factors, "so a reviewing court can make a meaningful assessment of a challenge to the ALJ's evaluation of the persuasiveness of the medical opinion." *Shannan G. v. Kijakazi*, No. 22-CV-01895 (NEB/ECW), 2023 WL 4707843, at

*17 (D. Minn. June 27, 2023) (cleaned up), *R. & R. adopted*, 2023 WL 4704588 (D. Minn. July 24, 2023).  In reassessing these factors, the ALJ may include any evidence that he feels is pertinent to supportability and consistency.

* * *

For the reasons stated above, the Court recommends that Plaintiff's Motion for Summary Judgment be granted in part and Defendant's Motion for Summary Judgment be denied.

## V.   RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that**:**

1.   Plaintiff's Motion for Summary Judgment (Dkt. 10) be **GRANTED in part**;

2.   Defendant's Motion for Summary Judgment (Dkt. 12) be **DENIED**; and

3.   This case be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g), for further administrative proceedings consistent with this Report and Recommendation.

DATED:  October 11, 2023          *s/Elizabeth Cowan Wright*
                                  ELIZABETH COWAN WRIGHT
                                  United States Magistrate Judge

**<u>NOTICE</u>**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).